(C.D. 4081)

BORDER BROKERAGE CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided October 1, 1970)

*Glad & Tuttle* (*George R. Tuttle, Jr.*, of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov* and *Robert E. Burke*, trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

FORD, Judge: The above cases, consolidated for the purpose of trial, involve the proper classification of certain merchandise described as an Electro Bug Signal System. The unit consists of an ER–35 receiver, an ET–50–B transmitter, and an FT–2 tripod and mast assembly. Only protest 66/77359 has a claim with respect to the tripod and mast. The transmitter and receiver were classified under the provisions of item 685.60, Tariff Schedules of the United States, as radio remote control apparatus and assessed with duty at 15 per centum ad valorem. The tripod and stand were classified as articles of iron or steel under the provisions of item 657.20, and assessed with duty at the rate of 19 per centum ad valorem.

Plaintiff contends that these items are properly subject to duty at 8.5 per centum ad valorem under the provisions of item 685.70, as electrical sound signalling apparatus.

The pertinent portions of the provisions involved provide as follows:

| | Articles of iron or steel, not coated or plated with precious metal: | |
|---|---|---|
| | *   *   *   *   *   *   * | |
| 657.20 | Other _____ | 19% ad val. |
| 685.60 | Radio navigational aid apparatus, radar apparatus, and radio remote control apparatus, all the foregoing and parts thereof___ | 15% ad val. |
| 685.70 | Bells, sirens, indicator panels, burglar and fire alarms, and other sound or visual signalling apparatus, all the foregoing which are electrical, and parts thereof_____ | 8.5% ad val. |

The record consists of the testimony of one witness called in behalf of plaintiff and two exhibits received on its behalf.

Mr. Harry Baron called on behalf of plaintiff testified that he designed the tone incoder in the transmitter and the tone decoder in the receiver. The system itself is used in high-lead logging operations. This operation is one which uses a spar or tower with a cable running for some distance into the woods and is anchored away from the machine which pulls the logs in from the woods to a central point. The machine is known as a yarder. In order to coordinate the work between the loggers and the yarder operator some form of signal must be utilized. Prior to the use of the imported articles, a combination of hand and voice signals was used.

The transmitter is a small unit contained in a stainless steel case and is operated by rechargeable batteries. This unit is mounted on the belt of the logger and contains two switches which must be pressed to transmit the signal. The double button is a safety measure to prevent accidental activation of the transmitter. When the transmitter is activated, it sends a radio frequency signal to the receiver which is usually mounted on the tripod and mast. The receiver is separately mounted on the specially designed tripod because the mounting on the yarder subjects the receiver to vibration. The transmitter sends an audio tone by radio frequency to the receiver. The receiver then filters out the radio frequency leaving the audio tone which operates a relay within the receiver. A solenoid which is not imported or sold by plaintiff is attached to the terminal of the relay which in turn is activated and operates an air whistle. The air whistle is not imported or sold by plaintiff. The sound of the whistle is for the purpose of giving the operator of the yarder an audible signal to haul the logs and also to warn the loggers that the logs will be moved.

The imported unit does not transmit voice and only transmits signal in one way.

Based upon this record, plaintiff contends the imported articles are in fact unfinished, electrical sound signalling apparatus. There is no dispute that the involved articles fall within the purview of the terms electrical, radio and apparatus. The basic dispute is whether they are sound signalling or radio remote control apparatus.

Since the solenoid and air whistle are not imported, plaintiff takes the position that the involved merchandise is subject to classification as claimed by virtue of General Interpretative Rule 10(h) which reads as follows:

(h) unless the context requires otherwise, a tariff description for an article covers such article, whether assembled or not assembled, and whether finished or not finished;

We are of the opinion that rule 10(h), *supra*, does not apply in this particular case since the transmitter and receiver are in themselves complete articles. It is true, for the purpose of signalling, some form of signal must be attached. However, the transmitter is designed to send a signal, which it does, to the receiver whose function it is to receive the signal, which it does, and activate a relay. This is in truth and in fact a remote control device operated by radio. Whether a signal is used or some other purpose could be served by such a device does not lessen the fact that it is all done by remote control.

This does not fall within the theory of the article being "more than" a remote control device under the case of *United States* v. *The A. W. Fenton Company, Inc.*, 49 CCPA 45, C.A.D. 794 (1962). The motors in the *Fenton* case, *supra*, in addition to being specially designed, formed part of the frame of the floor polisher. In this case, even though specially designed for the logging industry, the solenoid and whistle were merely activated by the remote control system and were not a physical portion of the radio system but merely an electronic portion.

In view of the foregoing, we do not deem it necessary to consider the applicability of General Interpretative Rule 10(c) relating to the question of when an article is described in two or more provisions. We are of the opinion, however, that the involved articles are in fact radio remote control apparatus and not electrical sound signalling apparatus.

Insofar as the claim in protest 66/77359 relating to the tripod stand is concerned, we are of the opinion that said article constitutes a part of the radio remote control apparatus since it is designed and dedicated for use with the apparatus and serves a useful purpose even though its use may be optional. *United States* v. *Ford Motor Company*, 51 CCPA 22, C.A.D. 831 (1963); *Trans Atlantic Company* v. *United States*, 48 CCPA 30, C.A.D. 758 (1960).

However, no claim having been made in protest 66/77359 for relief under item 685.60, we must overrule the protest with respect to the tripods.

Based upon the foregoing, the claims in the protests with respect to the transmitters and receivers are overruled.

Judgment will be entered accordingly.